IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH HARRISON, #M55353,  Plaintiff,  v.  WEXFORD HEALTH SOURCES, INC., L. PITTMAN, VIPIN SHAH, DOCTOR WILLIAMS, L. CUNNINGHAM, D. BROOKHART, NP STOVER, LUKING, and JOHN/JANE DOE 1-12,  Defendants. | Case No. 21-cv-00762-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Joseph Harrison, an inmate of the Illinois Department of Corrections who is currently incarcerated at Lawrence Correctional Center ("Lawrence"), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Harrison claims that he is not being given constitutionally adequate treatment for his illnesses, HLA-B27 and scleritis. He seeks monetary damages and injunctive relief.

The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v.*

*Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Harrison alleges the following: He suffers from a painful and debilitating autoimmune disorder called HLA-B27, also known as ankylosing spondylitis, which continues to go untreated. (Doc. 1, p. 27). He experiences severe body aches and arthritic pain and swelling, affecting his organs, arms, shoulders, back, hips, and entire legs. If left untreated, the disease can cause death within ten years. (*Id.* at p. 8). Harrison also has an eye condition called scleritis. (*Id.* at p. 27). Scleritis causes redness of the eye, blurriness, itching, light sensitivity, loss of visual acuity, and headaches behind the eye. The condition can cause complete deterioration of sight, loss of the eye, and ultimately death. (*Id.*).

Around May 7, 2019, Harrison had an appointment with Dr. Pittman to discuss his potential illnesses. (Doc. 1, p. 8). Harrison informed Dr. Pittman of his family's medical history. His mother, brother, sister, and nephew have all been diagnosed with ankylosing spondylitis. His mother also has scleritis. Following the appointment, no treatment or testing was ordered. In the following months, Harrison continued to seek treatment and testing by filing grievances. The grievances were either denied or not responded to by grievance staff.

At some point, Harrison was told to obtain medical documentation of the diseases from his family. (Doc. 1, p. 9). When his family visited him at Lawrence on October 30, 2019, they tried to drop off the requested medical documents but were "unsuccessful." (*Id.*). Harrison filed grievances on November 13, 2019, and January 19, 2020, regarding the incident but did not receive responses.

Harrison had medical appointments with Nurse Practitioner Stover on April 30, 2020, and May 21, 2020. (Doc. 1, p. 13). She had never heard of HLA-B27 and told Harrison he would need to pursue testing after his release because the testing he requested would not be performed at Lawrence. (*Id.*).

On July 10, 2020, Harrison had another appointment with Dr. Pittman. (Doc. 1, p. 14-15). He gave Dr. Pittman his family's medical documents, and she told him he would be tested for HLA-B27 and scheduled to see an eye doctor. (*Id.*).

On October 30, 2020, Harrison had a medical episode in which he had difficulty breathing, chest tightness, severe pain and numbness of his body, and extreme pain from knees to his toes. (Doc. 1, p. 16). He was taken to the medical unit where he was examined by medical staff. They concluded it was caused due to asthma, but Harrison disagrees with this diagnosis. He was returned to his cell twenty minutes later. (*Id.*). On November 1, 2020, Harrison again experienced difficulty breathing, dizziness, and sever pain in his lower legs and back. He again was taken to the medical unit, where he stayed only for thirty minutes. Harrison was told that he would be scheduled to see Dr. Shah. (*Id.*).

Harrison saw Dr. Shah on November 9, 2020. (Doc. 1, p. 17). Dr. Shah told Harrison that he may have HLA-B27 and that treatment would immediately begin. Dr. Shah also stated that Harrison should have been tested sooner and that the genetic disease had already progressed further than it should. (*Id.* at p. 18). Dr. Shah indicated that Harrison would be receiving Humira shots, folic acid, meloxicam, and methotrexate. Following the appointment, Harrison received all the medications, except for the Humira treatments. (*Id.*). The nurse who delivered his methotrexate told Harrison that he would be called to the healthcare unit for weekly shots of Humira, but he was never called. After filing a grievance about not receiving Humira, Harrison received a response from the Healthcare Unit Administrator, Cunningham, that there was no order for Humira from the physician in Harrison's medical chart." (*Id.* at p. 19). Cunningham also wrote that Harrison would be placed on the physician call line for review of his plan of care.

On February 17, 2021, Harrison had an appointment with Nurse Practitioner Luking. (Doc. 1, p. 20). Harrison asked about seeing Dr. Shah. NP Luking answered that he would not be

scheduled to see Dr. Shah because he was first scheduled to see a rheumatologist, Dr. Rasheed. (*Id.* at p. 20, 22). Dr. Rasheed also treats Harrison's mother. As of March 9, 2021, Harrison has not seen a rheumatologist, and his symptoms continue to worsen. He was also starting to experience bleeding and bruising, which was going untreated. (*Id.* at p. 22).

Harrison saw Dr. Williams on June 10, 2021. She told him that the bleeding and bruising were the result of taking meloxicam each day. (Doc. 1, p. 23). Dr. Williams instructed him to stop taking this medication for a few days to confirm her suspicion. He then asked about his Humira treatment, and Dr. Williams stated that she thought he was already receiving it. She then asked if he had been seen by a rheumatologist, which he had not. She then "dodged the issue of the Humira treatment by then discussing Plaintiff already being in the process of being scheduled to see rheumatology." (*Id.*).

Harrison saw NP Stover the following day on June 11, 2021, for swelling in his right elbow and hand. (Doc. 1, p. 24). She diagnosed his symptoms as progressive HLA-B27. NP Stover prescribed him Tylenol, even though he was told not to take Tylenol with Methotrexate. (*Id.* at p. 25).

Harrison alleges that he is not being referred to see a specialist due to the collegial review process implemented by Wexford Health Sources, Inc. ("Wexford") and the John/Jane Doe Doctors 1-12 who are a part of the collegial review process, who have denied him approval to see a rheumatologist.

## DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following counts:

**Count 1:** Eighth Amendment deliberate indifference claim against Dr. Pittman, Dr. Shah, Dr. Williams, Cunningham, Brookhart, NP Stover, NP Luking, John/Jane Does 1-12 and Wexford for failing to

|  |  |
|---|---|
|  | provide Harrison adequate treatment for his serious medical conditions, HLA-B27 and scleritis. |
| **Count 2:** | Fourteenth Amendment due process claim against Cunningham and Brookhart for the mishandling of his grievances. |
| **Count 3:** | Eighth Amendment cruel and unusual punishment claim against Brookhart for requiring Harrison to wear a mask when leaving his cell. |
| **Count 4:** | Eighth Amendment deliberate indifference claim against Brookhart and Cunningham for the delay in Harrison receiving certain medications. |

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the** *Twombly*[1] **pleading standard.**

### Count 1

Count 1 will proceeding against all Defendants for deliberate indifference to Harrison's serious medical needs by denying him testing and treatment for HLA-B27 and scleritis. *See Hayes v. Snyder,* 546 F. 3d 516, 522 (7th Cir. 2008) (discussing the elements of a deliberate indifference claim).

### Count 2

Throughout the Complaint, Harrison details various grievances that he filed regarding his lack of medical care and how the grievances were either denied, contained inaccurate responses, or were not responded to at all. He alleges that the mishandling of his grievances was a violation of his Fourteenth Amendment due process rights. Harrison, however, does not have a Fourteenth Amendment due process right to an effective grievance procedure. *See Owens v. Hinsley*, 635 F.3d

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (7th Cir. 2007).

950, 953 (7th Cir. 2011); *see also Owens v. Evans,* 878 F.3d 559, 563 (7th Cir. 2017). Additionally, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Thus, Warden Brookhart and Healthcare Administrator Cunningham cannot be liable for a due process violation because they denied and mishandled his grievances. Therefore, Count 2 is dismissed with prejudice.

**Count 3**

Harrison claims that on May 4, 2020, he wrote a grievance regarding the requirement that he must wear a KN95 protective mask at all times when outside of his cell. (Doc. 1, p. 12). He had witnessed staff that day not wearing their protective masks and believed he should not have to wear one either. Because he has asthma, the mask caused difficulty breathing, light-headedness, and tightness in his lungs. On at least two occasions during recreation, he had to use his emergency inhaler. In response to Harrison's grievance, the grievance officer concluded that Lawrence was subject to a policy implemented by "Springfield" requiring inmates to wear masks outside of their cells, and therefore, Harrison's request to be exempted from this policy was outside of the facility's jurisdiction. (*Id.* at p. 57). The grievance officer also recommended that Harrison should submit a request to the healthcare unit regarding issues he was having with his asthma due to wearing a mask. Brookhart concurred in this finding. Harrison claims that this was cruel and unusual punishment. (*Id.*).

These allegations, as pled, do not state a claim for an Eighth Amendment violation. Deferring to state department policy during a public health crisis and referring Harrison to healthcare for further issues with his asthma do not equate to the criminal recklessness necessary for establishing an Eighth Amendment violation. *See Burton v. Downey,* 805 F. 3d 776, 784 (7th Cir. 2015). Count 3 is dismissed without prejudice.

**Count 4**

Harrison alleges that he started to run out of his inhaler on September 12, 2020. (Doc. 1, p. 14). He began writing requests to the healthcare unit for a new one but did not receive a response. He finished his inhaler on September 30, 2020. (*Id.* at p. 19). Harrison submitted an emergency grievance on October 5, 2020, and was issued a new inhaler on October 6, 2020. (*Id.* at p. 65). He states that failure to timely renew his inhaler prescription demonstrates "the deliberate indifference of the Defendants toward Plaintiff's medical needs in this case." (*Id.* at p. 14).

Harrison also claims that during that time he was placed on crisis watch on November 18, 2020. (Doc. 1, p. 19). While on crisis watch, his blister pack medications were taken from him and distributed to him by a nurse that evening and then again in the morning. When he was released from watch the following day, on November 19, his medications were not returned to him. He informed a sergeant that he needed his medications and was given his Claritin, Meloxicam, and Folic Acid but was without naproxen and other medications for over a week. He sent request slips to the healthcare unit but did not receive a response. On November 31, 2020, he wrote an emergency grievance asking for the return of his medications or new refills. Warden Brookhart determined that the grievance was an emergency. By the time the grievance officer reviewed the grievance on December 15, 2020, the "situation had been corrected." (*Id.* at p. 20).

These allegations do not demonstrate deliberate indifference on the part of Cunningham and Brookhart. Harrison is mistaken that the fact he had to file a grievance demonstrates deliberate indifference on the part of these Defendants. (Doc. 1, p. 20). Deliberate indifference is pled by alleging that a prison official knows of a substantial risk of harm to an inmate and then "either acts or fails to act in disregard that risk." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Here, once Brookhart and Cunningham were alerted through emergency grievances that Harrison had not received medications, Harrison was provided his medications. Thus, he has not pled that they

acted with deliberate indifference, and Count 4 is dismissed without prejudice.

## MOTION FOR RECRUITMENT OF COUNSEL

Harrison has filed a Motion for Recruitment of Counsel (Doc. 3), which is **DENIED.**[2] Harrison discloses four unsuccessful efforts to contact attorneys via written correspondence and phone calls. Accordingly, he appears to have made reasonable efforts to retain counsel on his own. With respect to his ability to pursue this action pro se, Harrison indicates that he has a lack of skill, knowledge, and expertise in legal matters. Nonetheless, the Court finds that Harrison can proceed pro se, at least for now. He has some college education, and his pleadings demonstrate an ability to construct coherent sentences and relay information to the Court. Harrison appears competent to try this matter without representation at this time. Once discovery has commenced, if Harrison has significant difficulty, he may refile his motion.

## DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Wexford, Pittman, Shah, Williams, Cunningham, Brookhart, Stover, Luking, and John/Jane Does 1-12. **COUNT 2** is **DISMISSED with prejudice** and **COUNTS 3** and **4** are **DISMISSED without prejudice**.

Because Harrison's claims involve the alleged denial of medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The motion for recruitment of counsel (Doc. 3) is **DENIED without prejudice.**

The Clerk of Court shall prepare for Wexford, Pittman, Shah, Williams, Cunningham,

---

[2] In evaluating the Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority. Although Harrison is not proceeding *in forma pauperis* and has paid the full filing fee, the Court still find him indigent and unable to afford counsel for the purpose of Section 1915(e)(1).

Brookhart, Stover, Luking, and John/Jane Does 1-12 (once identified): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Harrison, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on the unknown Defendants until such time as Harrison has identified them by name in a properly filed motion for substitution. Guidelines and dates will be set for identifying the John/Jane Does once Defendants have filed their Answers to the Complaint. At that point in time, Harrison will have the opportunity to engage in limited discovery to ascertain their identity. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Warden Brookhart shall respond to discovery aimed at identifying these unknown defendants. Harrison is **ADVISED** that it is his responsibility to provide the Court with the name and service addresses for these individuals.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this**

**Merit Review Order.**

Finally, Harrison is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED:   November 22, 2021

                                          *s/Stephen P. McGlynn*
                                          **STEPHEN P. MCGLYNN**
                                          **United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.