IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSEPH HARRISON,                        )
                                        )
                    Plaintiff,          )
                                        )
vs.                                     )       Case No. 3:21-CV-762-MAB
                                        )
LYNN PITTMAN, *et al.*,                 )
                                        )
                    Defendants.         )
                                        )

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Presently before the Court are a series of motions filed by Plaintiff Joseph Harrison and Defendants Carissa Luking, Lynn Pittman, Doris Williams, Dee Dee Brookhart, and Lori Cunningham. For the reasons set forth below, Plaintiff's motion for leave to file amended complaint is GRANTED in part and DENIED in part (Doc. 108); Plaintiff's motion to appoint counsel is DENIED (Doc. 117); Plaintiff's motion to strike electronically filed documents is DENIED as MOOT (Doc. 118); and Defendants' motions for summary judgment for Plaintiff's failure to exhaust administrative remedies are DENIED as MOOT (Docs. 97, 100, 103).

## PROCEDURAL AND FACTUAL BACKGROUND

On June 30, 2021, Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 (Doc. 1). Plaintiff's Complaint alleges that, while housed at Lawrence Correctional Center ("Lawrence"), Defendants failed to provide with him constitutionally adequate treatment for his illnesses, HLA-B27 (an autoimmune disorder also referred to as ankylosing

spondylitis) and scleritis (*Id.*; *see also* Doc. 10).

Specifically, Plaintiff alleges that his mother advised him to request a test for HLA-B27 after he began experiencing symptoms associated with the disorder (Doc. 10 at p. 2). On May 7, 2019, Plaintiff met with Dr. Pittman to discuss his symptoms and potential treatment (*Id.*). Plaintiff also informed Dr. Pittman that his mother, brother, sister, and nephew had all been diagnosed with ankylosing spondylitis (*Id.*). Plaintiff claims he received no testing or treatment following his appointment. As a result, he filed numerous grievances related to his symptoms, and the lack of treatment and testing (*Id.*).

Plaintiff met with nurse practitioner Sara Stover on April 30, 2020, and May 21, 2020 (*Id.*). Stover had not heard of HLA-B27 and instructed Plaintiff to pursue testing after his release because such testing would not be performed at Lawrence (*Id.*). Plaintiff met with Dr. Pittman again on July 10, 2020, and provided Dr. Pittman with his family's medical records related to HLA-B27 (*Id.* at p. 3). On October 30, 2020, Plaintiff had a medical episode wherein he experienced numerous symptoms including difficulty breathing, chest tightness, severe pain, and numbness (*Id.*). Medical staff at Lawrence concluded the episode was due to asthma but Plaintiff believes it was related to HLA-B27 (*Id.*). Plaintiff experienced another, similar episode on November 1, 2020 (*Id.*).

Plaintiff met with Dr. Shah on November 9, 2020, to discuss his ongoing health issues (*Id.*). Dr. Shah told Plaintiff it was possible that he had HLA-B27 and that treatment would begin immediately (*Id.*). Plaintiff claims Dr. Shah stated that he would be prescribed folic acid, meloxicam, methotrexate, and Humira (*Id.*). However, Plaintiff only received folic acid, meloxicam, and methotrexate (*Id.*). As a result, Plaintiff filed an

emergency grievance about the failure to provide him with Humira (*Id.*). Lori Cunningham, the health care unit administrator, responded to his emergency grievance by informing Plaintiff that there was no order for Humira in his medical chart (*Id.*). Cunningham also wrote that Plaintiff would be placed on the physician call line for review of his plan of care (*Id.*).

On February 17, 2021, Plaintiff met with nurse practitioner Carissa Luking (*Id.*). Plaintiff asked Luking about seeing Dr. Shah and she informed him that Wexford had scheduled him to see a rheumatologist (*Id.* at pp. 3-4). Plaintiff's symptoms continued to worsen during this time period (*Id.* at p. 4). Plaintiff met with Dr. Williams on June 10, 2021 (*Id.*). At the appointment, Plaintiff again inquired about being prescribed Humira (*Id.*). Dr. Williams stated she thought he was already receiving Humira and inquired as to whether he had seen a rheumatologist (*Id.*). The next day, Plaintiff met with Stover who diagnosed swelling in his right elbow and hand as progressive HLA-B27 (*Id.*). Additionally, Plaintiff alleges that the continued delays he has experienced in being diagnosed and treated for HLA-B27 is the result of Wexford's collegial review process (*Id.*).

The Court conducted a preliminary review pursuant to 28 U.S.C. § 1915A and permitted Count I to proceed against multiple Defendants:

> Count I:    Eighth Amendment deliberate indifference claim against Dr. Pittman, Dr. Shah, Dr. Williams, Cunningham, Brookhart, NP Stover, NP Luking, John/Jane Does 1-12 and Wexford for failing to provide Harrison adequate treatment for his serious medical conditions, HLA-B27 and scleritis.

(Doc. 10 at pp. 4-5). Count II was dismissed with prejudice and Counts III and IV were

dismissed without prejudice (*Id.* at p. 8).

On January 21, 2022, Luking, Dr. Shah, and Wexford filed a motion to dismiss for failure to state a claim (Doc. 29). The Court granted in part and denied in part the motion to dismiss (Doc. 59). Specifically, the Court held Plaintiff stated an adequate claim as to Dr. Shah and Luking (*Id.* at pp. 8-10). However, the Court found Plaintiff's claim against Wexford and John/Jane Does 1-12 were not sufficiently pleaded because Plaintiff failed to demonstrate a sufficient causal link between Wexford's policy of collegial review and his medical problems (*Id.* at pp. 10-12). "Quite the opposite, the complaint indicates that [Plaintiff's] visit with an outside specialist was approved via the collegial review process." (*Id.* at p. 12) Consequently, Wexford and John/Jane Does 1-12 were dismissed without prejudice (*Id.*).

Thereafter, Defendants Luking, Dr. Pittman, Doris Williams, Dee Dee Brookhart, and Cunningham filed motions for summary judgment for Plaintiff's failure to exhaust administrative remedies (*see* Docs. 97, 100, 103).[1] Several weeks later, on August 24, 2023, Plaintiff filed the instant motion for leave to file an amended complaint (Doc. 108). Plaintiff's motion seeks to reintroduce Wexford as a defendant and reintroduce and identify Dr. Garcia as one of the John Doe defendants listed in his original complaint (*Id.* at pp. 1-2). Plaintiff also seeks to add three new defendants including Dr. Myers, Lars Gentry, and Lori Livingston as Defendants (*Id.* at p. 2). Defendants filed a joint response

---

[1] The Court acknowledges the confusion caused to the parties by the deadlines imposed in the Court's initial scheduling order (Doc. 96). The Court has since revised its scheduling order policies to require motions to amend to be filed prior to the deadline to file dispositive motions regarding the exhaustion of administrative remedies.

in opposition to Plaintiff's motion for leave to amend (Doc. 112). Plaintiff has since filed a reply brief in support of his motion to amend (Doc. 119).

Additionally, Plaintiff has also filed a motion to appoint counsel (Doc. 109) and a motion to strike two documents that were erroneously filed (Doc. 118).

## DISCUSSION

### I.   Motion for Leave to Amend (Doc. 108)

Plaintiff's motion for leave to amend and proposed amended complaint includes additional allegations and defendants (*see generally* Doc. 108). For simplicity's sake, the Court addresses the additional allegations against the proposed defendants in turn. Ultimately, as explained below, the Court GRANTS in part and DENIES in part Plaintiff's motion for leave to amend.[2]

#### a.   Applicable Legal Standards

Federal Rule of Civil Procedure 15(a)(2) instructs the courts to "freely give leave [to amend a complaint] when justice so requires." *See also Glover v. Carr*, 949 F.3d 364, 370 (7th Cir. 2020) ("Leave to amend a complaint should be granted liberally."). However, Rule 15(a)(2) does not require that leave to amend be granted in every situation. *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007). "Reasons for finding that leave should not be granted include 'undue delay, bad faith or dilatory

---

[2] Defendants also argue that Plaintiff's motion for leave to amend should be denied because it fraudulently relies upon Plaintiff's mother's prescription for Humira. The Court does not agree with this assessment. Plaintiff alleges that he was told he would be prescribed Humira and explains that he only provided his mother and brother's medical records as further evidence of his family's susceptibility to this condition. Moreover, to the extent Defendants have argued that Plaintiff must provide his own prescription for Humira, that argument is better addressed at summary judgment on the merits.

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment....'" *Id.* (quoting *Foman v. Davis,* 371 U.S. 178, 182, (1962)). Nonetheless, when a court is exercising its discretion to deny leave to amend, it must provide a justifying reason for doing so. *Foman*, 371 U.S. at 182.

When analyzing futility, "[a] district court need not allow the filing of an amended complaint, even when no responsive pleading has been filed, if it is clear that the proposed amended complaint is deficient and would not survive a motion to dismiss." *Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008). *See also Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir. 1996) ("There is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim."). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).[3]

Under the Eighth Amendment, prison officials are required to provide healthcare to incarcerated persons who cannot obtain healthcare on their own. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). To establish an Eighth Amendment claim for deliberate indifference under 42 U.S.C. § 1983, a plaintiff must demonstrate that:

---

[3] In addition, "in cases controlled by the PLRA, the Court is required to conduct a prompt, fresh threshold review under 28 U.S.C. 1915A." *Hardy v. Illinois Dep't of Corr.*, No. 15-CV-0437-MJR-SCW, 2017 WL 4224027, at *1 (S.D. Ill. Sept. 22, 2017).

(1) he or she had an objectively serious medical need; and (2) the individual defendants were deliberately indifferent to that need. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021); *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016). To establish that a defendant acted with deliberate indifference, "the Supreme Court has instructed us that a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Petties*, 868 F.3d at 728. "Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it *should* be known—is insufficient to make out a claim." *Id.*

### b. Dr. Garcia

Plaintiff's motion for leave and proposed amended complaint seek to advance a deliberate indifference claim against Dr. Garcia, a medical director at Wexford (Doc. 108 at pp. 1-2). Pertinently, Plaintiff seeks to impose liability against Dr. Garcia based upon his admission that he was aware that Plaintiff was approved for Humira (*see* Doc. 119, p. 9). Ultimately, the Court DENIES Plaintiff's request to amend his complaint to name Dr. Garcia as a defendant because such an amendment would be futile.

Significantly, Plaintiff's proposed claim against Dr. Garcia relies exclusively on the fact that Dr. Garcia knew of Plaintiff's medical condition. However, knowledge of Plaintiff's condition alone is insufficient to establish Eighth Amendment liability. In order to state a claim for deliberate indifference, Plaintiff needed to allege that Dr. Garcia was aware of a substantial risk that medical staff at Lawrence would not give Plaintiff the Humira and then disregarded that risk. *See, e.g., Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) ("Deliberate indifference occurs when a defendant realizes that a substantial

risk of serious harm to a prisoner exists, but then disregards that risk."). Here, Plaintiff has not made such an allegation. Furthermore, given Dr. Garcia's alleged role at Wexford to review medications and treatment for countless inmates, it would be untenable to impose a duty upon him to independently confirm that medication has been properly administered for every inmate whose medical file he reviews.

Consequently, the Court finds that granting Plaintiff leave to amend against Dr. Garcia would be futile. And as a result, Plaintiff will not be permitted to amend his complaint to include a claim against Dr. Garcia.

c.   Dr. Meyers

Plaintiff also seeks to amend his complaint to name Dr. Meyers, the medical director at Lawrence, as a defendant (Doc. 108 at p. 2). However, Plaintiff also concedes that "the deliberate indifference claim against Dr. Meyer is not a strong one[.]"

The Court believes that granting leave to amend and add a claim against Dr. Meyers would likewise be futile. For one, Plaintiff has not alleged that Dr. Meyers was the acting medical director at the time period in question. Plaintiff's alleged complaint appears to acknowledge this point and states Dr. Meyers is "now the medical doctor here at Lawrence … [and] has the authority to correct all the wrongs don[e] to the plaintiff by prescribing the Humira as promised by Vipin Shah." Nonetheless, even if Dr. Meyers was the acting medical director during the time period in question, Plaintiff has still failed to include allegations that could establish a claim of deliberate indifference against Dr. Meyers. The "contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, Monell's rule

that public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). *See also Odogba v. Wisconsin Dep't of Just.*, 22 F. Supp. 3d 895, 910 (E.D. Wis. 2014) ("In the context of a Rule 12(b)(6) motion, a plaintiff must allege enough facts to show that a defendant was personally involved in a constitutional deprivation."). For all these reasons, amending his complaint to include Dr. Meyers would be futile, and therefore is denied.

      d.  <u>Lars Gentry</u>

Plaintiff seeks to name Lars Gentry, an optometry doctor at Lawrence, as a defendant (Doc. 108 at p. 2). Specifically, Plaintiff's proposed amended complaint states Gentry proscribed him prednisone eyedrops for twelve months to treat his scleritis. Plaintiff claims the eyedrops were highly effective, but after twelve months, Gentry would only prescribe him eyedrops for shorter periods of time after he filed complaints due to Gentry's concern that Plaintiff's continued use of prednisone could result in glaucoma in his eye. Plaintiff also alleges Gentry could have prescribed him Humira to treat his symptoms.

Allowing Plaintiff leave to amend to add a claim against Gentry would be futile for several reasons. First, Plaintiff admits Gentry was treating him and that he only altered treatment over reasonable medical concerns about continued prednisone use. Significantly, Plaintiff was entitled to reasonable measures to prevent a serious risk of harm, but not to his preferred course of treatment. *See Grund v. Murphy*, 736 F. App'x 601, 604 (7th Cir. 2018). "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise

the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Here, Plaintiff's allegations demonstrate that Gentry's treatment was reasonable and came down to a matter of medical judgment, to which Plaintiff's preferred course of treatment does not take precedence over. *Id.* Plaintiff's complaint that Gentry did not prescribe him Humira fails for similar reasons, along with suffering from the erroneous assumption that an eye doctor can prescribe Humira.

For these reasons, allowing Plaintiff leave to amend his complaint to name Gentry would be futile. Therefore, Plaintiff's motion for leave is denied in this regard.

e. <u>Lori Livingston</u>

Plaintiff's motion also seeks to amend his complaint to add Lori Livingston as a defendant (Doc. 108 at p. 2). As alleged, Lori Livingston is a grievance officer at Lawrence who denied several of Plaintiff's grievance filings related to testing for HLA-B27 and Humira.

Notably, Plaintiff's attempt to advance a claim against Livingston would be futile because it attempts to hold her responsible for denying his grievances and not taking action based upon them. Seventh Circuit precedent makes it abundantly clear that such claims are impermissible. *See, e.g.*, *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance."); *Terry v. Vandalia Corr. Ctr.*, No. 3:21-CV-00878-SMY, 2021 WL 5579579, at *3 (S.D. Ill. Nov. 30, 2021) ("[P]rison officials incur no

liability under § 1983 if they fail or refuse to investigate a prisoner's complaints or grievances."). For this reason, Plaintiff's request to amend his complaint to name Livingston as a defendant is denied.

f.   Wexford Collegial Review

Plaintiff also seeks to amend his complaint to assert an Eighth Amendment deliberate indifference claim against Wexford alleging a delay in his treatment due to Wexford's collegial review process (Doc. 108 at pp. 2-3). Plaintiff further alleges that Wexford's protocols and handbook provide additional evidence of Wexford's deliberate indifference to his serious medical needs (*Id.*).

Before further examining Plaintiff's claim, a brief summary of Wexford's collegial review process is necessary. According to the Seventh Circuit:

> Collegial review is Wexford's procedure for discussing and approving offsite care for inmates. When a Wexford doctor decides that an inmate needs offsite care, the doctor submits a referral request form to the medical director of the inmate's facility. If the medical director agrees with the request, the medical director presents the request at a collegial review. The medical director, too, can submit referral request forms. The collegial review itself is a call between the medical director and a Wexford doctor in Pittsburgh who either approves the offsite service or suggests an alternate plan of care. If collegial review approves the offsite care, Wexford sends the prison an authorization number, at which point the prison calls the offsite specialist to schedule an appointment. Collegial reviews generally occur on a weekly basis. If collegial review approves offsite care, it usually takes an additional 24 to 48 hours for Wexford to send the prison an authorization number.

*Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 222-23 (7th Cir. 2021). *See also Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647 (7th Cir. 2021).

Critically, while section 1983 creates a private right of action against any "person" who violates the plaintiff's federal rights while acting under color of state law, the Supreme Court has ruled that municipalities are also "persons" who may be sued under section 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978); *Dean*, 18 F.4th at 235. Furthermore, the Seventh Circuit has held that "*Monell* governs Wexford's liability in this case because we, like our sister circuits, treat private corporations acting under color of state law as municipalities." *Dean*, 18 F.4th at 235. However, a municipality or private corporation is only liable under § 1983 for its own violations of the federal Constitution and laws. *Monell*, 436 U.S. at 694. This means a municipality cannot be "sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.*

Therefore, in order to raise a successful *Monell* claim against Wexford, Plaintiff must first show that he was deprived of a federal right. *Dean*, 18 F.4th at 235. Second, Plaintiff would have to trace the deprivation to Wexford's actions. *Id.* There are at least three types of municipal action that may give rise to liability, including: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (quoting *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007)). Third, Plaintiff must show that Wexford's "policy or custom demonstrates municipal fault, i.e., deliberate indifference." *Dean*, 18 F.4th at 235 (internal citation and quotation marks omitted). Finally, Plaintiff

must also establish that Wexford's action was the moving force behind the federal rights violation. *Id.* To establish such causation, Plaintiff must demonstrate a direct causal link between Wexford's policy and the violation of his constitutional right. *Id.*

Plaintiff's proposed amended complaint adequately alleges a constitutional deprivation based upon his injuries due to delayed care. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021) ("Denying or delaying appropriate treatment to an incarcerated person suffering from avoidable pain can violate the Eighth Amendment."). Additionally, the Seventh Circuit has already held that collegial review is an express policy. *Dean*, 18 F.4th at 236 ("Dean relies on an express policy (collegial review)[.]"). Consequently, the viability of Plaintiff's proposed amended complaint hinges upon whether it adequately alleges municipal fault and moving-force causation. *Id.*

Ultimately, at this stage of the proceedings, Plaintiff's proposed amended complaint adequately alleges both of these requirements. For one, Plaintiff's complaint adequately alleges that Wexford's collegial review process demonstrates deliberate indifference to his need for timely, appropriate medical treatment. And similarly, Plaintiff's complaint adequately alleges a direct causal link between Wexford's collegial review process and the claimed delay in Plaintiff's treatment that caused him injury and violated his constitutional rights.

In response, Defendants argue that the Seventh Circuit has held that the collegial review process is constitutional (Doc. 112 at p. 10). *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 651 (7th Cir. 2021) ("The collegial review process is not unconstitutional

on its face, and when we dig into the details of this case, we find that Howell did not offer evidence that would let a reasonable jury find that the collegial review process caused any violation of his Eighth Amendment rights."). Accordingly, Defendants contend that regardless of Plaintiff's new allegations related to collegial review, his claim fails as a matter of law. Admittedly, Defendants are correct in that the Seventh Circuit has held collegial review is not facially unconstitutional. *Id.*; *Dean*, 18 F.4th at 236. Yet such a determination alone does not foreclose Plaintiff's challenge. Plaintiff could (and has) alleged that collegial review caused unconstitutional delays as applied to him. *Dean*, 18 F.4th at 236. While such a claim creates "difficult problems of proof" and requires proving a pattern of similar constitutional violations, those will be challenges for Plaintiff to address as this case progresses and ultimately at summary judgment. *See id.*[4] However, when scrutinizing Plaintiff's complaint under a motion to dismiss standard, Plaintiff merely needed to allege considerably more than a single incident to establish both requisite fault and a causal connection between the policy and constitutional deprivation. And ultimately, Plaintiff's complaint does raise such allegations.

Defendants also argue that Plaintiff's claim necessarily fails because he was approved to see an outside specialist (Doc. 112 at p. 9). However, this argument is not an

---

[4] In *Dean*, the Seventh Circuit found the plaintiff failed to introduce "any substantive evidence of a pattern or practice of similar violations." 18 F.4th at 237. Significantly, however, the court was reviewing Plaintiff's claim following a trial based upon the district court's decision to deny the defendants' post-trial motion for judgment as a matter of law. Likewise, in *Howell*, the Seventh Circuit was reviewing a decision by the district court to grant Wexford's motion for judgment as a matter of law after a jury verdict had been returned against Wexford. 987 F.3d at 652. Additionally, several other cases have reviewed this issue when dealing with a motion for summary judgment, which involves a different standard of review and additional evidentiary requirements. *See, e.g., Cohn v. Wexford Health Sources, Inc.*, No. 3:19-CV-00376-NJR, 2022 WL 2802304, at *2 (S.D. Ill. July 18, 2022); *Harper v. Wexford Health Sources, Inc.*, No. 14-CV-04879, 2023 WL 6213683, at *6 (N.D. Ill. Sept. 25, 2023), *appeal pending*, Case No. 14-cv-04879 (7th Cir. Oct. 16, 2023).

accurate assessment of Plaintiff's claim against Wexford. Plaintiff is not alleging that Wexford's collegial review process altogether denied him of necessary medical care. Instead, Plaintiff is alleging that Wexford was deliberately indifferent to his serious medical needs because its collegial review process delayed his ability to receive timely, necessary care. Again, while Plaintiff will ultimately be required to provide sufficient evidence to support his allegations, he is not required to do so at this stage of the proceedings.

Therefore, Plaintiff is GRANTED leave to file an amended complaint re-naming Wexford as a Defendant and challenging Wexford's collegial review process.[5]

## II.   Motion to Appoint Counsel (Doc. 117)

Plaintiff has also filed another motion for the appointment of counsel (Doc. 117; *see also* Docs. 3; 33; 58). In this motion, Plaintiff requests court appointed counsel because of the complexity of this case (Doc. 117).

The Court has addressed and rejected similar arguments raised by Plaintiff in prior motions (*see* Doc. 10 (denying first motion for recruitment of counsel because Plaintiff appears competent to try this matter); Doc. 52 (denying second motion for recruitment of counsel); Doc. 72 (denying an additional motion for counsel because Plaintiff has repeatedly demonstrated that he is capable of representing himself)). Plaintiff's instant motion again fails to explain why he cannot litigate the present stage of proceedings on

---

[5] Typically in cases controlled by the PLRA, after an amended complaint is filed, the Court is required to conduct a prompt, fresh preliminary review under 28 U.S.C. § 1915A. *See Hardy v. Illinois Dep't of Corr.*, No. 15-CV-0437-MJR-SCW, 2017 WL 4224027, at *1 (S.D. Ill. Sept. 22, 2017). Here, however, because the Court already found Plaintiff's collegial review claim against Wexford survives preliminary review and that is the only amended claim Plaintiff is granted leave include, the Court will not re-conduct preliminary review.

his own. *See Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir. 2007) (articulating factors courts consider when evaluating motions for counsel). Plaintiff's filings are competent, well-written, and demonstrate a detailed understanding of the legal system that the Court does not commonly see in *pro se* litigants.

Additionally, in the Court's prior denials of Plaintiff's motions, the Court has stated that Plaintiff may refile his motion after discovery has commenced if he has significant difficulty during the discovery process (Doc. 10 at p. 8; Doc. 52 at p. 2). Currently, discovery on the merits has not yet commenced because Defendants have challenged whether Plaintiff exhausted his administrative remedies. Moreover, nothing in Plaintiff's current motion for recruitment of counsel explains why the Court should contradict its earlier orders and grant Plaintiff's instant motion for recruitment of counsel at this stage of the proceedings.

Accordingly, the Court DENIES Plaintiff's motion for recruitment of counsel (Doc. 117). However, the denial is without prejudice, meaning Plaintiff may file another motion for recruitment of counsel after the Court has reached a decision on Defendants' pending motions for summary judgment based on the failure to exhaust administrative remedies.

III.    Motion to Strike Electronically Filed Documents (Doc. 118)

Plaintiff has also filed a motion to strike, which seeks to strike a partially filed proposed amended complaint that Plaintiff submitted in error (Doc. 109). Plaintiff also seeks to strike a third amended complaint he claims to have filed on September 1, 2023. Ultimately, the Court DENIES Plaintiff's motion as MOOT.

Regarding the partially filed proposed amended complaint (Doc. 109), that document is not the operative complaint and was not e-filed as an amended complaint, so there is no need to strike it. *See Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008) ("When an amended complaint is filed, the prior pleading is withdrawn and the amended pleading is controlling."). Similarly, the proposed amended complaint purportedly e-filed by Plaintiff on September 1, 2023, does not need to be stricken because it was not even filed on the court's docket so there is nothing to strike. Finally, in light of the Court's above rulings, Plaintiff is required to file a new, narrower amended complaint that comports with the Court's Order and only adds a claim against Wexford.

IV.    <u>Motions for Summary Judgment on Exhaustion of Administrative Remedies</u>

The Court is cognizant of the pending motions for summary judgment on the issue of exhaustion filed by Defendants (Docs. 97, 100, 103). However, in light of the Court's decision to permit Plaintiff to file an amended complaint re-naming Wexford as a defendant, the Court opts to deny the pending motions for summary judgment on the issue of exhaustion as moot rather than leave these motions pending and then allow additional motions to be filed after Plaintiff files his amended complaint.

Accordingly, Plaintiff is ordered to file an amended complaint on or before **December 13, 2023**. Thereafter, Defendants will be permitted to file new motions for summary judgment on the issue of exhaustion on or before **January 12, 2024**. Defendants can simply restate all of the arguments already contained in their motions if desired and, in the case of Wexford, add an additional argument regarding Plaintiff's *Monell* claim, if necessary.

<u>C</u>ONCLUSION

For the reasons outlined above, Plaintiff's motion for leave to amend is GRANTED in part and DENIED in part (Doc. 108); Plaintiff's motion to appoint counsel is DENIED (Doc. 117); and Plaintiff's motion to strike is DENIED as MOOT (Doc. 118). Additionally, Plaintiff is ORDERED to file an amended complaint that complies with this Order, meaning the only new claim he may add is a deliberate indifference claim against Wexford based upon its collegial review process. Furthermore, in light of the Court's decision to permit Plaintiff to amend his complaint, Defendants' motions for summary judgment on the issue of exhaustion of administrative remedies are DENIED as MOOT (Docs. 97, 100, 103).

Plaintiff's amended complaint is due on or before **December 13, 2023**. Defendants' motions for summary judgment on the issue of exhaustion are due on or before **January 12, 2024**.

**IT IS SO ORDERED.**

**DATED:  November 22, 2023**

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**