**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JOSEPH HARRISON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **Case No. 3:21-CV-762-MAB** |
| | ) |
| **LYNN PITTMAN,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on three motions for summary judgment based upon Plaintiff's failure to exhaust his administrative remedies (Docs. 129, 132, 135). For the reasons set forth below, Defendant Dr. Doris Williams' motion is GRANTED (Doc. 129); Defendants NP Carissa Luking, Dr. Lynn Pittman, and Wexford Health Sources' motion is DENIED (Doc. 132); and Defendants Dee Dee Brookhart and Lorie Cunningham's[1] motion is GRANTED (Doc. 135).

### BACKGROUND

Plaintiff Joseph Harrison filed this civil rights action pursuant to 42 U.S.C. § 1983 on June 30, 2021 (Doc. 1). Plaintiff's original Complaint alleged that while housed at Lawrence Correctional Center ("Lawrence"), Defendants failed to provide with him

---

[1] Defendant Cunninghame is listed as "Lori Cunningham" on the Court's docket. However, the correct spelling is "Lorie Cunningham" with an "e" at the end. Accordingly, the Clerk of Court is DIRECTED to MODIFY the docket to reflect Defendant Cunningham's properly spelled first name.

constitutionally adequate treatment for his illnesses, HLA-B27 (an autoimmune disorder also referred to as ankylosing spondylitis) and scleritis (*Id.*; *see also* Doc. 10).

The Court conducted a preliminary review pursuant to 28 U.S.C. § 1915A and Plaintiff's original Complaint was permitted to proceed on one Eighth Amendment deliberate indifference claim against Dr. Pittman, Dr. Shah, Dr. Williams, Ms. Cunningham, Ms. Brookhart ("Warden Brookhart"), NP Stover, NP Luking, John/Jane Does 1-12 and Wexford for failing to provide Plaintiff adequate treatment for his serious medical conditions, HLA-B27 and scleritis (*see* Doc. 10 at pp. 4-5). Following preliminary review, Wexford successfully moved to dismiss Plaintiff's claim against it because Plaintiff failed to illustrate a sufficient causal link between Wexford's collegial review policy and his medical problems (Doc. 59 at pp. 10-12; *see also* Doc. 29). However, Plaintiff was subsequently granted leave to amend his complaint and reintroduce a claim against Wexford (*see generally* Doc. 122).[2]

Plaintiff filed his Amended Complaint on December 6, 2023 (Doc. 123).[3] Thereafter, Dr. Williams filed a motion for summary judgment on the issue of exhaustion and a supporting memorandum on January 11, 2024 (Docs. 129, 130). Nurse Luking, Dr. Pittman, and Wexford filed an exhaustion-based motion for summary judgment one day later (Docs. 132, 133). Likewise, Warden Brookhart and Ms. Cunningham filed an

---

[2] As explained in the Court's Order dated November 22, 2023, the Court did not conduct another round of preliminary review after granting Plaintiff leave to amend his complaint because Plaintiff was only permitted to reintroduce a collegial review claim against Wexford and that claim had already survived preliminary review (*see* Doc. 122 at p. 15, fn. 5).

[3] For a detailed summary of the background and procedural history of this case, see the Court's Orders dated November 22, 2021 (Doc. 10), and November 22, 2023 (Doc. 122).

exhaustion-based summary judgment motion on January 12, 2024 (Doc. 135). Plaintiff filed a response in opposition to all three motions on January 31, 2024 (Doc. 137), along with two supplemental responses to the motions filed by Ms. Cunningham, Warden Brookhart, and Dr. Williams (Docs. 138, 139). Dr. Williams, Warden Brookhart, and Ms. Cunningham filed replies in support of their motions several days later (Docs. 140, 142).

<div align="center">LEGAL STANDARD</div>

### I.     Summary Judgment Standards

Summary judgment is appropriate if the movant shows there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the Court "generally will construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). This means courts cannot resolve factual disputes in favor of the party seeking summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

### II.     Exhaustion Requirements

As outlined in the Prison Litigation Reform Act, "[a] prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) (citing 42

U.S.C. § 1997e(a)). A remedy has not been exhausted if the prisoner failed to abide by the procedures for pursuing relief. *Id.* Thus, to properly exhaust one's administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

However, an inmate is not required to exhaust administrative remedies that are not actually available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("Remedies that are genuinely unavailable or nonexistent need not be exhausted."). The Seventh Circuit has "found remedies unavailable in a number of instances in which the inmate, through no fault of his own, could not have accessed the grievance procedure." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018). Furthermore, the failure to exhaust administrative remedies is an affirmative defense that the defendants carry the burden of proving.[4] *See Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018). "To meet their burden, the defendants must show beyond dispute that remedies were available." *Id.* at 533-34.

III.    *IDOC Grievance Procedures*

Individuals incarcerated within the Illinois Department of Corrections (IDOC) are required to follow the grievance procedure outlined in the Illinois Administrative Code

---

[4] Generally, when considering a motion for summary judgment based upon a prisoner's alleged failure to exhaust his or her administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). However, an evidentiary hearing is not necessary when there are no material factual disputes. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009) (no hearing required where there are "no disputed facts regarding exhaustion, only a legal question"). Here, for the reasons discussed below, a *Pavey* hearing may be necessary, if requested, to resolve certain, limited questions of fact.

to exhaust their administrative remedies. *See* 20 Ill. Admin. Code § 504.800, *et seq.* (2017). To initiate the normal grievance process, an inmate must file a grievance with their institutional counselor within 60 days of the discovery of the incident. *Id.* at § 504.810(a). After the counselor provides a response, an inmate may submit his grievance to a grievance officer who is to report his or her findings and recommendations to the Chief Administrative Officer (the "warden") within two months. *Id.* at 504.830(e). The warden reviews the grievance officer's findings and recommendations, and then provides a written decision. *Id.* If an inmate is unsatisfied with the warden's decision, he has 30 days from the date of the warden's decision to appeal to the Administrative Review Board (ARB). *Id.* at § 504.850(a). The ARB then submits a written report to the Director of the IDOC, who makes a final decision within six months, when reasonably feasible. *Id.* at § 504.850(e).

Alternatively, an inmate can request for his or her grievance to be handled on an emergency basis by submitting the grievance directly to the warden. *Id.* at § 504.840. If the warden determines the grievance should not be handled as an emergency, the inmate is notified in writing that he or she may resubmit the grievance in accordance with the standard grievance process. *Id.* at § 504.840(c). However, if the warden determines the grievance is an emergency, the warden must expedite processing of the grievance and respond by indicating what action shall be or has been taken. *Id.* at § 504.840(b). Additionally, if an inmate appeals the warden's decision on an emergency grievance, the ARB is also required to expedite processing of the emergency grievance. *Id.* at § 504.850(f).

## Discussion

The parties have provided the Court with numerous grievances and accompanying documents from the period in question. In order to streamline the review process, the Court first reviews the grievance records to determine whether Plaintiff procedurally exhausted each relevant grievance by filing "complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. Then, the Court will consider the contents of each procedurally exhausted grievance as applied to each moving Defendant, to determine whether the contents of any relevant, procedurally exhausted grievance identifies and exhausts Plaintiff's claim against that Defendant. *See* 20 Ill. Admin. Code § 504.810 (c); *Walker v. Harris,* No. 3:19-CV-00664-MAB, 2021 WL 3287832, at *4 (S.D. Ill. Aug. 2, 2021) ("Additionally, even if Plaintiff had properly submitted this grievance through the appropriate institutional channels and then to the ARB prior to filing this lawsuit, the contents of this grievance are not specific enough to exhaust the claim against Defendant Harris."); *Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010) ("Grievances are intended to give prison administrators an opportunity to address a shortcoming, not to put individual defendants on notice of a lawsuit.").

## I. _Plaintiff's Grievances_

### a. _Grievance No. 6-19-200, dated 6/7/19 (Doc. 123, pp. 38-39)_

Plaintiff submitted Grievance No. 6-19-200 on June 7, 2019 (Doc. 123 at pp. 38-39). In this grievance, Plaintiff requested that he be tested for HLA 27[5] because many of his close family members have tested positive for HLA 27 (_Id._). Plaintiff's counselor responded by pointing out that Plaintiff had been seen by a doctor within the community standard of care, and a follow-up appointment was scheduled (_Id._ at p. 38).

Plaintiff admits (Doc. 137 at pp. 2-5), and the ARB's grievance records confirm (_see, e.g._, Doc. 133-1), that Plaintiff did not appeal this grievance through all steps of the administrative process. However, Plaintiff argues his failure to exhaust his administrative remedies as to this grievance should be excused because his counselor erroneously informed him that no further action was needed on his part (Doc. 137 at p. 2). Nurse Luking, Dr. Pittman, and Wexford counter that Plaintiff has changed his story to now blame his counselor, which is contradictory to his prior claim that he timely sent the grievance to his Grievance Officer (Doc. 142 at p. 2).

The Court agrees with Defendants that Plaintiff's response brief contradicts the factual allegations made in his Amended Complaint. Specifically, in his Amended Complaint, Plaintiff alleges he "copied the grievance no. 6-19-200 and sent the original to (**second step**) the Grievance Officer within the 30 days allotted. There has been no response!" (Doc. 123 at p. 8) (emphasis added). Meanwhile, in his response in opposition,

---

[5] In Plaintiff's earlier grievances, such as this one, he refers to HLA-B27 as "HLA 27." However, it is clear what illness Plaintiff is referring to and this misspelling is inconsequential.

Plaintiff states, "If plaintiff was provided with this information he would of have known to appeal the decision to the Grievance Officer and then to the Administrative Review Board (ARB)." (Doc. 137 at p. 3). Plaintiff's response also states, "by no means did the plaintiff deliberately caused grievance no. 6-19-200 to stall *at the first level.*" (*Id.* at p. 5) (emphasis added).

"A party may not create a *genuine* issue of fact by contradicting his own earlier statements, at least without a plausible explanation for the sudden change of heart. As we have recently stated, '[i]t is well established that a party cannot create a genuine issue of fact by submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony.'" *Richardson v. Bonds*, 860 F.2d 1427, 1433 (7th Cir. 1988) (quoting *Diliberti v. United States*, 817 F.2d 1259, 1263 (7th Cir. 1987)). Here, Plaintiff has provided no explanation, let alone a plausible one, for the sudden change in his allegations regarding Grievance No. 6-19-200. Moreover, it is noteworthy that both Plaintiff's original Complaint and Amended Complaint contain the same allegation and include signed verification statements that cite to 28 U.S.C. § 1746 (Doc. 1 at pp. 8, 31-32; Doc. 123 at pp. 8, 31). *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) ("But a verified complaint is not just a pleading; it is also the equivalent of an affidavit for purposes of summary judgment, because it 'contains factual allegations that if included in an affidavit or deposition would be considered evidence, and not merely assertion.'"); *see also Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996) (treating portions of a verified complaint as affidavit material).

Therefore, because Plaintiff has now contradicted his verified Amended Complaint's explanation as to exhaustion of this grievance, the Court declines to consider Plaintiff's contentions in his response on this particular issue.[6] As in *Richardson*, Plaintiff cannot attempt to raise a distinct, conflicting argument for the first time in response to Defendants' summary judgment motions and use that to create a genuine issue of material fact. *Richardson*, 860 F.2d at 1433; *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("If the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not entitled to relief.").

Consequently, because Defendants have provided sufficient evidence (i.e., the ARB's grievance records) to demonstrate that Plaintiff failed to exhaust this remedy, Plaintiff was required to demonstrate a contested issue of fact. However, by both failing to provide any evidence tending to demonstrate that Plaintiff submitted this grievance to his Grievance Officer and failing to explain why he has now contradicted his prior allegations, the Court finds Plaintiff did not exhaust Grievance No. 6-19-200.

   b.   *Grievance No. 1-20-544, dated 1/19/20 (Doc. 137, p. 34)*

Grievance No. 1-20-544 was filed by Plaintiff on January 19, 2020 (*see* Doc. 137 at p. 34). In this grievance, Plaintiff complained of the failure to respond to a different grievance he filed that sought medical documents (*Id.*). Plaintiff alleges there was no need

---

[6] Had Plaintiff consistently claimed that his counselor thwarted his efforts to exhaust this grievance, the Court might view this issue differently. At a minimum, Plaintiff needed to provide a sufficient justification for why his explanation changed from what he stated in his Verified Amended Complaint. But he did not do either. Therefore, the Court declines to consider the new and inconsistent allegations first raised in his response brief.

to further appeal this grievance because he received the requested relief of obtaining his medical documents (Doc. 137 at p. 5).

Ultimately, the Court has not further analyzed whether this grievance was exhausted because it is readily apparent the issues Plaintiff grieved are not related to Plaintiff's claim in this action. Consequently, this grievance could not have exhausted Plaintiff's claim against any Defendant.

      *c.*   <u>*Grievance No. 1-20-776, dated 1/20/20 (Doc. 123, pp. 43-44)*</u>

Plaintiff filed Grievance No. 1-20-776 on January 20, 2020 (Doc. 123 at pp. 43-44). In Grievance No. 1-20-776, Plaintiff grieved that he had not received any HLA-B27 testing (*Id.*). Plaintiff marked this grievance as an emergency, but the Warden determined that it was not (*Id.*). Plaintiff then filed this grievance using the standard grievance process (*Id.*). The Grievance Officer recommended the grievance be denied as moot because Plaintiff was seen by a physician, and the Warden concurred in the recommendation (*Id.* at p. 49). Six days after the Warden's decision, Plaintiff signed the bottom portion of the Grievance Officer's Report, indicating he wished to appeal the decision to the ARB (*Id.*).

However, the parties dispute whether Plaintiff appealed this Grievance to the ARB. Plaintiff claims he did and points to his signature on the Grievance Officer's Report (Doc. 137 at pp. 7 & 42). To support his contentions, Plaintiff also attached copies of several letters he allegedly sent to the ARB inquiring into the status of this grievance and several other grievances, and supporting mail payment authorization forms (*see* Doc. 137 at pp. 48-53). Meanwhile, Defendants contend that Grievance No. 1-20-776 was not

properly exhausted, as demonstrated by its absence from the ARB's records (Doc. 133 at p. 12).

Significantly, Defendants bear the burden of demonstrating no genuine dispute as to any material fact. *See* FED. R. CIV. P. 56(a); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("Exhaustion is an affirmative defense, and the burden of proof is on the defendants."). While their motions may have initially met this burden by demonstrating that the ARB did not receive Plaintiff's filing, Plaintiff's responses and the exhibits he cites do "more than simply show that there is some metaphysical doubt as to the material facts." *Siegel*, 612 F.3d at 937. Again, Plaintiff provided evidence including: (1) a copy of the Grievance Officer's Report that includes his signature appealing the grievance to the ARB/Director (Doc. 137 at p. 42); (2) letters Plaintiff sent to the ARB inquiring into the status of this grievance and several others (*Id.* at pp. 48, 50, 52); (3) forms titled "Offender Authorization for Payment" which indicate Plaintiff had money withdrawn from his account to pay for postage to send his inquiry letters to the ARB (*Id.* at pp. 49, 51, 53); and (4) a similar payment authorization form from May 28, 2020, which states the purpose of the withdrawal was to mail Grievances Nos. 1-20-776 and 5-20-087 to the ARB (*Id.* at p. 47).

An inmate may not be faulted for failing to exhaust an administrative remedy when he is thwarted from doing so by factors outside of his control, like delays or losses associated with the mailing process. *See generally Dole*, 438 F.3d at 810-11. In *Dole*, an inmate timely appealed his grievance to the ARB by placing it in a chuckhole for mailing. *Id.* at 808. Nonetheless, the grievance was apparently lost and never received by the ARB.

*Id.* Subsequently, the defendants filed a motion for summary judgment based upon the failure to exhaust administrative remedies, which argued that the plaintiff had failed to exhaust his administrative remedies by not trying to send the grievance to the ARB again. *Id.* at 809-10. The Seventh Circuit rejected this argument, holding the plaintiff had no means of controlling his complaint once it was picked up by the guard to be mailed. *Id.* at 810. Therefore, "[b]ecause [the plaintiff] properly followed procedure and prison officials were responsible for the mishandling of his grievance, it cannot be said that [the plaintiff] failed to exhaust his remedies." *Id.* at 811. *See also Duett v. Johnson*, No. 3:20-CV-01354-GCS, 2022 WL 17476766, at *4 (S.D. Ill. Dec. 6, 2022) ("Jurisprudence within the Seventh Circuit indicates that the prison mailbox rule, which holds that a prisoner's court filing is deemed 'filed' the day it is placed in the prison mail system, applies to exhaustion.") (internal quotation marks and citation omitted).

Here, as in *Dole*, "Plaintiff has presented evidence creating a disputed issue of fact regarding whether he was thwarted from fully exhausting" this grievance. *See Moore v. Qualls*, No. 21-CV-01454-SPM, 2024 WL 3673146, at *4 (S.D. Ill. Aug. 6, 2024). To be specific, the Court believes a genuine dispute of fact exists as to whether Plaintiff failed to exhaust this grievance through his own fault, or whether he was prevented from doing so by factors outside of his control. And in light of this factual dispute, it would be inappropriate to grant summary judgment in Defendants' favor based upon this grievance. *See Tolan*, 572 U.S. at 656 (2014). However, as noted below, if Dr. Pittman wishes to pursue her affirmative defense of failure to exhaust on this specific grievance, she may request a *Pavey* hearing. *See infra* at pp. 30-31.

    *d.*  *Grievance No. 2-20-497, dated 2/24/20 (Doc. 123, pp. 53-54)*

Plaintiff filed Grievance No. 2-20-497 on February 24, 2020 (Doc. 123 at pp. 53-54). In this grievance, Plaintiff complained that he still had not been tested for HLA-B27 and claimed that "Lawrence Correction Center's Medical Department has deliberately refused or unreasonably delayed" testing and treatment of HLA-B27 (*Id.*). After the Warden determined this grievance should be expedited as an emergency, the Grievance Officer recommended it be denied as moot because Plaintiff had been recently seen by a doctor (*Id.* at pp. 53-55). The Warden concurred in the recommendation on March 9, 2020 (*Id.* at p. 55). Plaintiff then signed the Grievance Officer's Report to appeal the decision to the ARB (*Id.*). However, as Defendants point out, the ARB has no record of receiving this grievance either (*see generally* Doc. 133-1). Plaintiff again counters this claim by citing to the signed appeal portion of the Grievance Officer's Report, the letters he sent to the ARB, and the accompanying payment authorization forms (*see* Doc. 137 at pp. 48-53).

Ultimately, as with Grievance No. 1-20-776, both parties have produced evidence to support their arguments for or against exhaustion of this grievance. Therefore, the Court will currently treat Grievance No. 2-20-497 as having been exhausted. However, because this Grievance only appears to potentially be applicable to Defendants that Plaintiff exhausted his administrative remedies to through other grievances, the Court does not believe a *Pavey* hearing is necessary for this grievance.[7]

---

[7] At most, this grievance may be relevant to exhausting Plaintiff's claims against Nurse Luking and/or Wexford. However, as discussed below, Plaintiff filed other exhausted grievances that squarely identify and exhaust his claims against those Defendants. *See infra* at pp. 25-26, 27. Additionally, Grievance No. 2-20-497 makes no mention or reference to Dr. Pittman, so there is no need to conduct a *Pavey* hearing on this grievance in relation to Dr. Pittman.

e. *Grievance No. 4-20-416, dated 4/10/20 (Doc. 123, pp. 57-58)*

Plaintiff filed Grievance No. 4-20-416 on April 10, 2020 (Doc. 123 at pp. 57-58). In this grievance, Plaintiff: (1) grieved the response he received to Grievance No. 2-20-497; (2) again sought testing for HLA-B27; (3) accused Ms. Cunningham of providing false information; and (4) requested he be provided with IDOC and Wexford policies related to testing and treatment of medical issues like HLA-B27 (*Id.*). Plaintiff's Counselor denied this grievance as duplicative of Grievance No. 2-20-497 (*Id.*), and both the Grievance Officer and Warden relied upon the same logic in their denials (*Id.* at p. 56). Plaintiff appealed to the ARB, which denied the grievance because an inmate cannot grieve the response to a grievance (*Id.* at p. 59). The ARB also noted that "[i]f offender wishes to appeal a grievance, it may be submitted to this office for review." (*Id.*).

Defendants do not dispute that Plaintiff timely appealed Grievance No. 4-20-416 to the ARB. Additionally, Wexford concedes that this grievance "does complain about unexplained Wexford policies and requests copies of them." (Doc. 133 at pp. 3-4). Nevertheless, Defendants argue Plaintiff did not exhaust his administrative remedies as to this grievance because it was denied on procedural grounds as duplicative (*Id.*).

Unquestionably, certain portions of Grievance No. 4-20-416 are duplicative of Grievance No. 2-20-497. For example, Plaintiff expressly asks to be treated for HLA-B27 in both grievances. Additionally, at least one portion of Plaintiff's claims in Grievance No. 4-20-416 is improper because it challenges Ms. Cunningham's actions in reviewing

Grievance No. 2-20-497 and Plaintiff's medical charts, without alleging any actual involvement on Ms. Cunningham's part (*see* Doc. 123 at pp. 57-58).[8]

However, a comparison of the two grievances reveals a significant distinction between them. Namely, Grievance No. 4-20-416 complains that "Wexford administration is also deliberately indifferent in these matters for the policies/procedures/practices they [e]nforce which cause great risk to my health and wellbeing by not properly permitting necessary testing, putting profits over patients." Yet, as Wexford admits, Grievance No. 2-20-497 "does not name or otherwise identify Wexford." (Doc. 133 at p. 3). Meanwhile, Wexford agrees that Grievance No. 4-20-416 "does complain about unexplained Wexford policies[.]" (*Id.*). *See Johnson v. Sonnenberg*, No. 3:22-CV-111-RLM-MGG, 2023 WL 3994943, at *2 (N.D. Ind. June 14, 2023) ("The August 30 grievance was similar to Grievance 143395 insofar as they both complained of deficiencies in the law library computer, but was distinct as it alleged Law Library Supervisor Sonnenberg was denying him access to legal materials in retaliation for filing suit against her.").

Thus, by Wexford's own concessions, Grievance No. 4-20-416 is not duplicative of Grievance No. 2-20-497 because it complains of Wexford policies while Grievance No. 2-20-497 does not. *See, e.g.*, *Fultz v. Cambe*, No. 3:20-CV-259-DRL-MGG, 2022 WL 1404658,

---

[8] Generally speaking, reviewing or processing a grievance is not enough to give rise to liability. *See Allen v. Jeffreys*, No. 23-CV-3775-DWD, 2024 WL 308522, at *10 (S.D. Ill. Jan. 26, 2024). In fact, the Seventh Circuit has found that "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of Owens's grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Here, both the contents of Grievance No. 4-20-416 and Ms. Cunningham's statement provided in the Grievance Officer's Report on Grievance No. 2-20-497 indicate that Plaintiff is challenging Ms. Cunningham's actions in reviewing Grievance No. 2-20-497.

at *2 (N.D. Ind. May 3, 2022) ("If, as the defendants argue, Grievance 102189 was not sufficiently related to Mr. Fultz's claim against the defendants, then the grievance office made the grievance process unavailable to Mr. Fultz by improperly rejecting his additional grievances as duplicative of Grievance 102189. Thus, the undisputed facts show that Mr. Fultz either exhausted his administrative remedies, or his administrative remedies were made unavailable to him."). And since the grievances are not duplicative, Plaintiff was improperly prevented from exhausting this grievance. *See Moore v. Illinois Dep't of Corr.*, No. 3:19-CV-01206-MAB, 2021 WL 308805, at *9 (S.D. Ill. Jan. 29, 2021) ("A counselor incorrectly categorizing a different grievance as a duplicate seems to be a very fine example of a prison official failing to respond to a properly filed grievance.").

Consequently, insofar as it relates to Plaintiff's policy claim against Wexford, the Court finds prison officials improperly prevented him from exhausting this grievance by making the grievance process unavailable.

### f. *Grievance No. 5-20-087, dated 5/4/20 (Doc. 137, pp. 63-65)*

Grievance No. 5-20-087 was filed on May 4, 2020 (Doc. 137 at pp. 63-65). This grievance challenged Lawrence's Covid-19 mask policy and is not relevant to Plaintiff's claims (*Id.*). Accordingly, the Court declines to conduct a further exhaustion analysis of this grievance.

### g. *Grievance No. 5-20-320, dated 5/25/20 (Doc. 123, pp. 61-62)*

Plaintiff filed Grievance No. 5-20-320 on May 25, 2020 (Doc. 123 at pp. 61-62). In the grievance, Plaintiff alleged he had two appointments with Nurse Stover and at the conclusion of the second appointment, she told Plaintiff he would have to wait until his

release to be tested for HLA-B27 (*Id.*). Grievance No. 5-20-320 was found to constitute an emergency (*Id.*). The Grievance Officer recommended the grievance be denied as moot because Plaintiff was being seen and treated on a continual basis (*Id.* at p. 60). The Warden concurred in the recommendation and Plaintiff timely appealed to the ARB (*Id.*). The ARB also found the grievance to be moot because Plaintiff was being treated by a medical provider (*Id.* at p. 64).

Counsel representing Nurse Stover has conceded that Grievance No. 5-20-320 was fully exhausted (*see* Doc. 133 at 10) ("This grievance reflects an exhustion of Plaintiff's administrative remedies for the claim against Ms. Stover; thus, she did not move for summary judgment on exhaustion."). Notably, however, this grievance solely identifies and concerns Plaintiff's claim against Nurse Stover. Therefore, it provides no support for exhaustion as to any of the other Defendants and will not be considered further.

### h. *Grievance No. 10-20-068, dated 10/5/20 (Doc. 137, pp. 93-94)*

Plaintiff filed Grievance No. 10-20-068 on October 5, 2020 (Doc. 137 at pp. 93-94). As Plaintiff admits, however, he did not appeal this grievance through all administrative levels because he received the relief requested (*Id.* at p. 11). Moreover, this grievance concerns a claim made by Plaintiff regarding his inhaler. As such, it is unrelated to Plaintiff's claims in this case and will not be considered further.

### i. *Grievance No. 12-20-013, dated 11/30/20 (Doc. 123, pp. 65-66)*

Grievance No. 12-20-013 was filed on November 30, 2020 (Doc. 123 at pp. 65-66). Plaintiff stated that he was seen by Dr. Shah and told he would be receiving treatment that included Humira (*Id.*). This grievance was found to be an emergency and review was

expedited (*Id.*). Thereafter, the Grievance Officer recommended and the Warden concurred in denying this grievance because there was no medical order for Plaintiff to receive Humira on record at the Health Care Unit (*Id.* at p. 67). Plaintiff appealed to the ARB, which denied his request for the same reason (*Id.* at p. 69).

Counsel representing Dr. Shah has conceded that this grievance was exhausted and concerns Plaintiff's claim against Dr. Shah (Doc. 133 at p. 11). However, as was the case with Grievance No. 5-20-320, this grievance provides no support for exhaustion as to any Defendants other than Dr. Shah or Nurse Stover. Accordingly, it will not be further considered.

### *j.   Grievance No. 12-20-12, dated 11/31/20 (Doc. 137, pp. 100-01)*

Plaintiff filed Grievance No. 12-20-12 on November 31, 2020 (Doc. 137 at pp. 100-01). In this grievance, Plaintiff complained that a correctional officer took his medication when he was placed on watch but did not return it afterwards (*Id.*). Plaintiff admits he did not fully complete the grievance process because his medications were returned to him shortly after (*Id.*).

Regardless of whether Plaintiff exhausted his remedies as to this grievance, the Court need not consider it further because Grievance No. 12-20-12 is unrelated to the claims Plaintiff has raised in this action.

### *k.   Grievance No. 03-21-328, dated 3/27/21 (Doc. 123, pp. 73-74)*

Grievance No. 03-21-328 was filed on March 27, 2021 (Doc. 123 at pp. 73-74). In the grievance, Plaintiff discussed a February 2021 appointment with Nurse Luking, wherein he requested Humira treatment and/or to be scheduled to see a rheumatologist (*Id.*). The

Warden found this grievance to be an emergency and expedited review (*Id*.). The Grievance Officer then recommended that the grievance be found to be moot because a rheumatology appointment had "been approved" and was "in the process of being scheduled." (*Id*. at p. 76). At that point, as Plaintiff admits, he did not take further action on this grievance because he believed he was going to timely receive the relief he requested (Doc. 137 at p. 13).

Plaintiff argues this grievance should be treated as exhausted because he did not need to continue the grievance process after receiving a response indicating he was going to receive the relief he requested by being scheduled to see a rheumatologist (*see* Doc. 137 at p. 13). In response, Nurse Luking, Dr. Pittman, and Wexford argue that Plaintiff cannot claim that he already grieved this issue because a prior, allegedly similar grievance he filed was a year old and involved a different provider (*see* Doc. 142 at p. 4).

Put simply, Defendants' reply misses the mark. Plaintiff is not arguing that he did not need to exhaust this grievance because it involved the same issue and provider. Rather, as Plaintiff states, given the response he received that a rheumatology appointment was being scheduled, "he didn't need to appeal any further" because he was told he would receive the relief he requested (*see* Doc. 137 at p. 13).

Plaintiff's argument is correct. Numerous cases have held that an inmate need not appeal a grievance to a higher channel if he or she has received all the relief requested. *See, e.g.*, *Thornton v. Snyder*, 428 F.3d 690, 697 (7th Cir. 2005) (rejecting the defendants argument that the plaintiff had to continue to appeal to higher channels after receiving the relief requested); *Osterberg v. Meyers*, No. 18 C 50082, 2020 WL 91992, at *3 (N.D. Ill.

Jan. 7, 2020) ("Although Defendants contend that the grievance procedure required Osterberg to appeal *any* response, the PLRA does not require appeals of favorable responses."); *Carson v. Shah*, 2019 WL 2338502, at *3 (S.D. Ill. June 3, 2019) (prisoner who received the relief requested when he was sent to an ophthalmologist did not need to appeal denial of grievances); *Hampton v. Baldwin*, No. 18-CV-550-NJR-RJD, 2019 WL 3046332, at *11 (S.D. Ill. Apr. 29, 2019); *Martin v. Cook Cnty. Dep't of Corr.*, No. 10 C 2162, 2013 WL 1181491, at *5 (N.D. Ill. Mar. 20, 2013) ("Nothing else in the record suggests that Plaintiff should have taken additional steps once he submitted a grievance and received an apparently favorable response."). In fact, IDOC's grievance procedures as laid out in section 504.850(a) of the Illinois Administrative Code support this contention, stating "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director." In other words, Plaintiff need not appeal further if the issue has been resolved to an inmate's satisfaction. *See Demus v. Nickerson*, No. 15-CV-11741, 2019 WL 1923399, at *3 (N.D. Ill. Apr. 30, 2019) ("Even the regulations did not require Demus to appeal in this circumstance.").

That is exactly what occurred here. Plaintiff requested a rheumatology appointment so he could receive Humira treatment (Doc. 123 at p. 73). He was then told he was being scheduled for a rheumatology appointment, thus receiving the requested relief (or at least an assurance of receiving such). To require Plaintiff to further appeal a grievance decision that indicated to him that the relief he requested was forthcoming "is

not only counter-intuitive, but it is not required by the PLRA." *Thornton v. Snyder*, 428 F.3d 690, 697 (7th Cir. 2005).

Furthermore, while Defendants have not raised this contention, it is worth mentioning that the Court's analysis does not change in a situation such as this, where Plaintiff was told he would receive the requested relief but had not yet actually received it. "The jail cannot fail to follow through on promised action and then reasonably fault the plaintiff for failing to complete the administrative review process." *Myers v. McAuley*, No. 02 C 1590, 2002 WL 31006131, at *4 (N.D. Ill. Sept. 5, 2002). *See also Dixon v. Page*, 291 F.3d 485, 490 (7th Cir. 2002) ("Requiring a prisoner who has won his grievance in principle to file another grievance to win in fact is certainly problematic."). For example, in *Demus*, the plaintiff received a response to his grievance stating a renewal script had been written for the medication he requested in his grievance. *See* 2019 WL 1923399, at *4. The defendant argued the plaintiff should have appealed his initial grievance that was filed in July because he did not receive the requested medication until he filed another grievance in October. *Id.* The court rejected this argument, stating "[t]rue, this request was not resolved within the thirty-day appeal period after the July grievance response. But the statement that 'a renewal script ha[d] been written' could have reasonably led [the plaintiff] to believe he did not need to appeal following the July grievance response." *Id. See also Nesbitt v. Villanueva*, No. 09 C 6080, 2011 WL 737617, at *4 (N.D. Ill. Feb. 24, 2011) ("Because Nesbitt reasonably believed that he had prevailed on his grievance, he was not required to file an appeal. When he received a response indicating that his

complaint would be addressed by the dispensary, he was entitled to rely on that promise rather than appeal the grievance.").

Thus, in light of the favorable response Plaintiff received on Grievance No. 03-21-328, he did not have to further appeal this grievance to exhaust his administrative remedies.[9] Grievance No. 03-21-328 was exhausted.

>   *l.*   <u>Grievance No. 7-21-77, dated 7/5/21 (Doc. 123, pp. 79-80)</u>

Grievance No. 7-21-77, filed on July 5, 2021, grieved Plaintiff having not yet received an appointment to see Dr. Rasheed, a rheumatologist (Doc. 123 at pp. 79-80). Plaintiff claimed he was told by both Dr. Williams and Nurse Stover that the paperwork for him to be referred to Dr. Rasheed had been sent (*Id.*). However, at an appointment a few weeks later, he claims Dr. Shaw told him that no such paperwork existed (*Id.*). Plaintiff's grievance was found to be an emergency, but was subsequently denied as moot by the Warden because his appointment was scheduled (*Id.* at p. 81). As Plaintiff concedes, he did not further appeal this grievance because he received the requested appointment shortly after (Doc. 137 at pp. 13-14).

Crucially, Plaintiff filed this action on June 30, 2021, yet this grievance was not submitted until July 5, 2021 (Doc. 123 at p. 79). Therefore, this grievance was not properly exhausted prior to Plaintiff filing this action and it will not be considered further.

---

[9] Plaintiff's grievance also requested to be compensated for pain and suffering (*see* Doc. 123 at p. 73). However, the PLRA only requires an inmate to exhaust all available remedies. *See Thornton v. Snyder*, 428 F.3d 690, 695 (7th Cir. 2005). Therefore, because money damages were not an available remedy, he was not required to continue to exhaust. *See id.* ("Here, too, with monetary relief unavailable, there was simply no 'remedy' that a higher appeal could provide after Thornton received the transfer and new mattress he requested.").

## II.   _Exhaustion Analysis as Applied to Each Defendant and Claim_

Having thoroughly reviewed all of the grievances provided by Plaintiff and Defendants, the Court has found that only Grievances Nos. 1-20-776, 2-20-497, 4-20-416, and 03-21-328 may have been properly exhausted (or were otherwise excused from exhaustion for the reasons discussed above) and are applicable to any of the moving Defendants. Accordingly, the Court considers those grievances as to the moving Defendants to determine if any of those exhausted grievances identify the Defendant and Plaintiff's claim against them. _See Williams v. Luking_, No. 3:21-CV-00448-GCS, 2023 WL 317663, at *3 (S.D. Ill. Jan. 19, 2023) ("Instead, an inmate is only required to 'articulat[e] what facts the prison could reasonably expect from a prisoner in [his or her] position.'") (quoting _Glick,_ Fed. App'x at 582).

### a.   _Dr. Williams (Doc. 129)_

Dr. Williams argues that she is entitled to summary judgment based upon Plaintiff's failure to exhaust his administrative remedies because none of Plaintiff's exhausted grievances identify his claim against her (_see generally_ Doc. 130). Dr. Williams emphasizes that Plaintiff's Amended Complaint alleges he first saw Dr. Williams on June 10, 2021 (_see Id._ at pp. 9-10; Doc. 123 at p. 20). Therefore, Dr. Williams argues that Grievances Nos. 4-20-416, 1-20-776, and 2-20-497 are irrelevant to his claim against her because they fail to identify Dr. Williams and concern events that occurred before Plaintiff saw Dr. Williams (Doc. 130 at pp. 9-10). In response, Plaintiff contends that Grievance No. 12-20-013 (Doc. 123 at pp. 65-66) and Grievance No. 7-21-77 (Doc. 123 at

pp. 79-80) both demonstrate that he exhausted his administrative remedies as to his claim against Dr. Williams (*see generally* Doc. 139).

The Court is not persuaded by Plaintiff's argument. Grievance No. 12-20-013 was filed on November 30, 2020, long before Plaintiff alleges he saw Dr. Williams in the Health Care Unit at Lawrence (*see* Doc. 123 at p. 20; Doc. 139 at p. 5). *See, e.g., Barrow v. Wexford Health Sources, Inc.*, Case No. 14-cv-941, 2015 WL 11539508, at *5 (S.D. Ill. July 16, 2015) ("Plaintiff's change in treatment providers necessarily changed the conditions of the medical care provided, necessitating a new grievance."); *Abdullah v. Shah*, No. 3:16-CV-920-NJR-DGW, 2018 WL 1833149, at *4 (S.D. Ill. Feb. 9, 2018) ("Plaintiff cannot simply complain about the treatment provided by one specific person and expect to rope in each and every subsequent treatment provider."). Furthermore, Grievance No. 12-20-013 specifically complained of the care Plaintiff received related to a visit with Dr. Shah. Therefore, this Grievance failed to exhaust his claim against Dr. Williams.

On the other end of the spectrum, Plaintiff filed Grievance No. 7-21-077 on July 5, 2021, a few days after he filed his original Complaint with this Court (*see* Doc. 123 at pp. 79-80; Doc. 1). Therefore, this grievance was not properly exhausted prior to Plaintiff filing this action. *See Barrow v. Wexford Health Sources, Inc.*, 793 F. App'x 420, 423 (7th Cir. 2019) ("Here, Barrow did not exhaust his remedies with respect to Dr. Trost because he did not name the doctor in any grievance submitted before he commenced this lawsuit."). Additionally, Plaintiff argues that this grievance represented a continuing violation and was included in his amended complaint, thus relating back to the claim he already raised (*see* Doc. 139 at pp. 8-9). This argument lacks merit because Plaintiff did not alter or bring

a new claim against Dr. Williams by filing his Amended Complaint. *See Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) ("Chambers has a fallback argument, raised for the first time on appeal. He argues that because he eventually filed a grievance with the ARB and later amended his complaint, his suit is saved. Setting aside the question of waiver, this argument is meritless. By its plain terms, the PLRA requires prisoners to exhaust administrative remedies before filing suit; a 'sue first, exhaust later' approach is not acceptable."). Plaintiff's claim against Dr. Williams did not change and therefore, this grievance needed to be fully exhausted prior to Plaintiff initiating this action.

Furthermore, the Court has independently reviewed all of Plaintiff's other, procedurally exhausted grievances and determined that none of them identify and exhaust his claim against Dr. Williams. Therefore, Dr. Williams' motion for summary judgment based upon Plaintiff's failure to exhaust his administrative remedies is GRANTED (Doc. 129).

     *b.* *Nurse Luking (Doc. 132)*

Several of the procedurally exhausted grievances reference treatment Plaintiff received by nurse practitioners (*see, e.g.* Doc. 123 at pp. 43-47). But the Court does not need to wade through each grievance individually because Grievance No. 03-21-328 is dispositive to Nurse Luking's motion. In that grievance, Plaintiff wrote about how he had an appointment with Nurse Luking on February 17, 2021, and provided her with a medical record from Dr. Rasheed which discussed treatment for HLA-B27 (*see* Doc. 123 at pp. 73-74). Nurse Luking took the letter and said he had an appointment with that

doctor, but no follow-up had occurred over a month later when he wrote Grievance No. 03-21-328 (*Id.*).

The Court believes that that Grievance No. 03-21-328 put prison officials on notice of Plaintiff's claim against Nurse Luking related to the lack of medical treatment and the failure to provide him with a follow-up appointment. This conclusion is bolstered by Nurse Luking's reply in support, which admits as much, stating "Plaintiff did initiate grievance #3-21-328 concerning Ms. Luking[.]" (Doc. 142 at p. 4). While Defendants then argue this grievance was abandoned, as discussed above, Plaintiff did not need to continue to appeal this grievance after he received a favorable response. As such, Plaintiff exhausted his administrative remedies as to Nurse Luking.

Therefore, Nurse Luking's motion for summary judgment based upon Plaintiff's failure to exhaust his administrative remedies is DENIED (Doc. 132).

c. *Dr. Pittman (Doc. 132)*

Indisputably, Grievance No. 1-20-776 references Dr. Pittman on numerous occasions. For instance, Plaintiff wrote, "On or about May 2019, I was seen by (Dr. Pittman, L.) for medical concerns regarding HLA-B27." (Doc. 123 at pp. 43-44). As a result, Defendants do not dispute that this grievance identifies Dr. Pittman (*see* Doc. 133 at p. 12). Instead, they argue Grievance No. 1-20-776 was not properly exhausted. In light of the Court's determination to the contrary, the Court concludes Plaintiff exhausted his administrative remedies as it relates to Dr. Pittman.

Dr. Pittman's motion for summary judgment based upon Plaintiff's failure to exhaust his administrative remedies is DENIED (Doc. 132). However, Dr. Pittman may

request a *Pavey* if she wishes to further dispute whether Plaintiff procedurally exhausted Grievance No. 1-20-776. *See infra* at pp. 30-31.

### d. *Wexford Health Sources (Doc. 132)*

Grievance No. 4-20-416 unequivocally raises Plaintiff's claim against Wexford, stating in pertinent part, "Wexford administration is also deliberately indifferent in these matters for the policies/procedures/practices they [e]nforce which cause great risk to my health and wellbeing by not properly permitting necessary testing, putting profits over patients." (Doc. 123 at pp. 57-58).[10] Moreover, as to Plaintiff's claim against Wexford, the Court found Grievance 4-20-416 was improperly denied as duplicative. Thus, Plaintiff has exhausted his administrative remedies as to this claim.

Consequently, Wexford's motion for summary motion for summary judgment based upon Plaintiff's failure to exhaust his administrative remedies is DENIED (Doc. 132).

### e. *Warden Dee Dee Brookhart (Doc. 135)*

Warden Brookhart contends that she is entitled to summary judgment based upon Plaintiff's failure to exhaust his administrative remedies because none of Plaintiff's fully-exhausted grievances reference her (*see* Doc. 135 at p. 11). In response, Plaintiff claims that Grievance No. 4-20-416 "clearly names Lori Cunningham, Dee Dee Brookhart and

---

[10] Wexford has argued that "it is unclear what, if anything, Plaintiff's complaint is about Wexford's policies, nor does it put the prison on notice of any complaints with Wexford's policies." (Doc. 133 at p. 13). The Court is not persuaded. Plaintiff's grievance specifically complains about Wexford policies that are deliberately indifferent to his wellbeing and designed to favor profits over patients (Doc. 123 at pp. 57-58). In other words, Plaintiff clearly expressed what his complaint was about and also used some of the same words as those he is now proceeding on – which goes above and beyond what is required by the PLRA.

Wexford of being deliberate indifference to Plaintiff's serious medical conditions of HLA-B27 (Doc. 138 at p. 6).

Having thoroughly reviewed all of the grievances above that were identified as exhausted or excused, the Court agrees with Warden Brookhart. None of Plaintiff's grievances mention Warden Brookhart by name or identify any action that may be attributable to her. *See Roberts v. Neal*, 745 F.3d 232, 235-36 (7th Cir. 2014) ("The grievance has a fatal defect, but it lies elsewhere; it lies in the absence of anything in it to indicate that Davis was the target."). In fact, the Court comprehensively combed through Grievance No. 4-20-416 in response to Plaintiff's claim that it named Warden Brookhart, but the Court did not find any statement addressing her or actions for which she could be held responsible for (*see generally* Doc. 123 at pp. 57-58). Therefore, the Court finds Plaintiff has not exhausted his administrative remedies as to Warden Brookhart.

Warden Brookhart's motion for summary judgment based upon Plaintiff's failure to exhaust his administrative remedies is GRANTED (Doc. 135).

   *f. <u>Lorie Cunningham (Doc. 135)</u>*

Ms. Cunningham, the Health Care Unit Administrator at Lawrence (*see* Doc. 123 at p. 4), argues she is entitled to summary judgment based upon Plaintiff's failure to exhaust his administrative remedies because none of Plaintiff's exhausted grievances identify his claim against her. In response, Plaintiff contends that Ms. Cunningham lied in her response to Grievance No. 2-20-497 and was aware of his urgent need for HLA-B27 testing (*see* Doc. 138 at pp. 6-8)

Ms. Cunningham admits that Grievance No. 4-20-416 mentions her and challenges her response to a prior grievance (*see* Doc. 135 at p. 4). But, as Ms. Cunningham points out, Plaintiff's complaints leveled against her in Grievance No. 4-20-416 alleged that she made false statements in response to a prior grievance (*Id.*). As previously explained, this was an improper issue to raise because Plaintiff was not alleging Ms. Cunningham personally did anything more than review his grievance and medical records. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of Owens's grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim.").

Nevertheless, even if Plaintiff could challenge Ms. Cunningham's role in reviewing his prior grievance, nothing about Plaintiff's grievance allegation regarding providing false information relates to his current claim against Ms. Cunningham for deliberate indifference based upon the failure to provide adequate medical treatment. Again, as it relates to Ms. Cunningham, Grievance No. 4-20-416 only identified a claim related to falsification of records.[11] This is not equivalent to (or even similar to) the claim

---

[11] In Grievance No. 4-20-416, Plaintiff also wrote that "by lying in her response HCUA Cunningham is willfully and deliberately aiding in denying me proper medical treatment/testing[.]" (Doc. 123 at p. 58). This statement is also insufficient to identify Plaintiff's actual claim against Ms. Cunningham because it is also centered upon Plaintiff's allegation that she provided false statements, and does not allege that she met with him, provided improper treatment, or was personally aware that others within the Health Care Unit were denying him adequate care. Additionally, Plaintiff included a catch-all provision in Grievance No. 4-20-416, writing, "As this grievance is specifically against all IDOC and Wexford Staff, administrative and otherwise, deemed/found to be involved in denying me proper medical treatment/testing for my HLA-B27 issues." (Doc. 123 at p. 58). However, merely including a catch-all provision without identifying any individual conduct, related to his current claim against Ms. Cunningham is insufficient to notify the prison as to his claim against her. *See Pyles v. Gaetz*, No. 13-CV-0299-MJR-SCW, 2014 WL 7049337, at *4 (S.D. Ill. Dec. 12, 2014) ("Plaintiff's response also makes clear that he put in the 'John or Jane Doe IDOC employees' as a catch-all, and that he thought naming—or describing in detail—all the relevant parties would be unduly burdensome to the person reviewing the grievances. Plaintiff misunderstands the

Plaintiff is proceeding on in this case and therefore, Grievance No. 4-20-416 does not exhaust Plaintiff's administrative remedies as to his current claim against Ms. Cunningham. *See Hacker v. Dart*, 62 F.4th 1073, 1084 (7th Cir. 2023) (finding a grievance that challenged the plaintiff's access to listening devices and requested a listening device did not provide prison officials with fair notice to his complaint that he was not receiving medication). Furthermore, because none of Plaintiff's other procedurally exhausted grievances reference Ms. Cunningham, Plaintiff has failed to exhaust his administrative remedies as to his claim against her.

Thus, Ms. Cunningham's motion for summary judgment based upon Plaintiff's failure to exhaust his administrative remedies is GRANTED (Doc. 135).

### III.      *Dr. Pittman May Request a Pavey Hearing*

The Court recognizes that contested issues of fact exist as to whether Plaintiff exhausted his administrative remedies regarding certain grievances, including Grievance No. 1-20-776, which is likely outcome determinative as to Dr. Pittman's motion (Doc. 132). Consequently, if Dr. Pittman wishes to further pursue her affirmative defense of failure to exhaust, she must file a notice within **14 days** of this Order requesting a *Pavey* hearing. If a hearing is requested, Dr. Pittman shall identify the witnesses she intends to call to testify as well as the subject matter of each witness. Moreover, the hearing will be limited to determining whether Plaintiff exhausted his claim against Dr. Pittman in Grievance

---

purpose of the grievance requirement and the scope of Illinois law. Unless he fully names all parties that he holds responsible for his wrongs, or at the very least provides as much descriptive detail as possible, the prison cannot attempt to address the situation.").

No. 1-20-776. If no request is made, the Court will enter a scheduling order for discovery on the merits of this case.[12]

<div align="center">

### CONCLUSION

</div>

For the reasons discussed above, Defendant Dr. Doris Williams' motion is GRANTED (Doc. 129); Defendants NP Carissa Luking, Dr. Lynn Pittman, and Wexford Health Sources' motion is DENIED (Doc. 132); and Defendants Dee Dee Brookhart and Lorie Cunningham's motion is GRANTED (Doc. 135).

Additionally, if Dr. Pittman wishes to continue pursuing her affirmative defense of failure to exhaust administrative, she must file a notice requesting a *Pavey* hearing within 14 days of this Order. If no request is timely made, the Court will enter a scheduling order for discovery on the merits.

**IT IS SO ORDERED.**

**DATED:** September 12, 2024

<div align="right" style="margin-right: 20%">

**s/ Mark A. Beatty**_____
**MARK A. BEATTY**
**United States Magistrate Judge**

</div>

---

[12] The Court does not believe a *Pavey* hearing is necessary as to Nurse Luking and Wexford because the Court's holdings as to the grievances identifying them involve questions of law, not contested issues of fact. For example, as related to Nurse Luking, the Court holds that Plaintiff did not need to continue to appeal Grievance No. 03-21-328 after receiving a favorable response. Likewise, as to Wexford, the Court holds that Grievance No. 4-20-416 identifies Wexford, was incorrectly denied as duplicative, and involved a question of law that does not require a *Pavey* hearing.